THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| AZLEN ADIEU FARQUOIT MARCHET,<br><br>Petitioner,<br><br>v.<br><br>LARRY BENZON,<br><br>Respondent. | **MEMORANDUM DECISION<br>AND ORDER DENYING<br>HABEAS-CORPUS PETITION**<br><br>Case No. 2:19-CV-394-TS<br><br>District Judge Ted Stewart |

In this federal habeas-corpus case, *pro se* inmate Azlen Adieu Farquoit Marchet,[1] attacks his state conviction. 28 U.S.C.S. § 2254 (2022) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

Having carefully considered the relevant case documents and law, the Court concludes Petitioner has inexcusably procedurally defaulted most of his claims for relief; raised a claim not grounded in the Federal Constitution; and failed to overcome the federal standard review on a claim of ineffective assistance of trial counsel.

## I. BACKGROUND

### A. Facts of Crime

Based on his jury conviction for rape of S.W., Petitioner was sentenced to five years to life. *State v. Marchet*, 2014 UT 147, ¶ 16.

---

[1] Because Petitioner is *pro se*, his pleadings must be construed liberally. *Garrett v. Selby, Connor, Maddux, & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). However, this requirement does not obligate the Court to form arguments for him or excuse compliance with procedural rules. *Id.*

1

> Marchet's conviction result[ed] from his 2003 rape of S.W., a woman he knew casually through her place of employment. On October 16, 2003, S.W. visited a Salt Lake City dance club. By apparent coincidence, Marchet was also at the club that evening. Marchet approached her. She recognized and hugged him. Marchet asked her if she wanted to see a new luxury SUV he had parked outside. She did, and the two walked out the front door of the club together.
> Marchet guided S.W. to an unlit parking area, but S.W. stopped when she did not see the vehicle that Marchet had described. At that point, Marchet--who was much larger than S.W.--nudged S.W. between two parked cars and began to kiss her. She struggled and managed to temporarily break away, but Marchet grabbed her arm and pulled her back. He then placed her hand on his exposed penis. She told him, "That's not what I came out here for."
> Despite her protests, Marchet grabbed S.W. by the waist and flipped her around so that she was facing away from him. Marchet pinned S.W.'s arms against her midsection with one arm and pulled her pants down. S.W. continued to struggle and protest as Marchet attempted to penetrate her anally. When that attempt failed, Marchet penetrated her vaginally. Marchet eventually released S.W. She then pulled up her pants and ran back toward the club. He chased after her, caught up, and asked, "[Y]ou're not going to pull a Kobe Bryant on me, are you?" She ran back into the club distraught and crying. She immediately told club employees that she had been raped.
> A Salt Lake City Police Department officer, Officer Miller, was at the club performing a bar check. Club employees notified Miller of S.W.'s rape allegations. Miller met with S.W. for about forty-five minutes. During their discussion, S.W. was upset, shaking, and crying. S.W. told Miller that Marchet had just sexually assaulted her. That same night, a forensic nurse, Nurse Thompson, examined S.W. During the examination, Thompson documented no readily apparent physical injuries. She did, however, observe redness around S.W.'s vaginal opening that she interpreted as an injury consistent with nonconsensual sex.

*Marchet*, ¶¶ 2-5.

### B. State Criminal Trial

Before trial, the State moved to admit evidence of Petitioner's sexual assault of two other women, A.H. and P.C., arguing that their testimony "would be offered for the noncharacter

2

purposes of proving intent, a common scheme or plan, absence of mistake or accident, and lack of [Victim's] consent." *Id.* ¶ 6. After assessing similarities between the other sexual assaults and circumstances of Victim's rape "to determine relevance and potential for unfair prejudice, the district court granted the State's motion and allowed the testimony." *Id.*

> At trial, S.W. recounted her version of events as described above. Officer Miller testified about the interview she had conducted with S.W. shortly after the assault, including S.W.'s "hysterical" demeanor and apparent lack of intoxication. Club employees also testified that S.W. was crying and upset upon returning from the parking lot.
> A.H. testified that she had met Marchet at a night club in June 2003. About a month after first meeting him, A.H. again encountered Marchet at a club. After the club closed, Marchet asked A.H. to talk with him outside. A.H. accompanied him toward what she thought was his car. Marchet then grabbed A.H.'s waist and pulled her into an unlit alley, where he turned her around and restrained her. Despite her vocal protests, Marchet then penetrated her anally and vaginally. Immediately afterwards, A.H. confronted Marchet, who responded that they "both just probably needed to have a little--a little fun, just blow off a little steam."
> P.C. testified that she met Marchet at a hotel dance club in January 2005. Around closing time, Marchet accompanied P.C. to the hotel lobby, and eventually led her into a stairwell. He began to kiss her, but she protested, at which point he pulled her to the stair landing, grabbed her, and spun her around so her back was toward him. As she continued to protest, Marchet restrained her arms and pulled her skirt down to her thighs. P.C. heard the sound of a zipper and believed that Marchet was about to rape her. She struggled free, but Marchet again grabbed her, pulled up her shirt, and began kissing her breasts. Marchet released her after she began yelling. Marchet called her on the phone about a half hour later and told her, "I just wanted to check on you because you ran out of here pretty quick and you seemed upset."
> Thompson, the forensic nurse who had examined S.W., testified about the exam, the redness she observed, and her opinion that the redness was an injury consistent with nonconsensual sex. On cross-examination, Thompson conceded that the redness was not something that most people would consider an injury and that she had observed the redness with an instrument that provided 15x magnification. She also opined that some form of injury will occur in 70 to 80% of nonconsensual penetration cases, while consensual penetration results in injury approximately 10% of the time.

3

During his cross-examination of Thompson, Marchet's counsel sought to introduce her forensic examination report into evidence. The State objected, arguing that the report contained information that S.W. had engaged in sexual intercourse with another man within seventy-two hours before the incident with Marchet. The State argued that this information was irrelevant and should be redacted from the report pursuant to rule 412 of the Utah Rules of Evidence, which generally prohibits "evidence offered to prove that a victim engaged in other sexual behavior." Utah R. Evid. 412(a)(1).

Marchet's counsel argued that the evidence was admissible to demonstrate that someone other than Marchet could have caused S.W.'s injury. *See id*. R. 412(b)(1). When the district court pointed out that rule 412 generally requires pretrial notice when evidence of a victim's sexual activity will be offered to show an alternate source of injury, Marchet's counsel candidly admitted that he had not discovered the information about S.W.'s prior sexual encounter during his preparations for trial. The district court ruled that the information would be redacted.

Despite the district court's ruling, Marchet's counsel filed a written motion to admit the prior sexual activity evidence under rule 412(b) for the purpose of providing an alternate explanation for S.W.'s injury. Marchet's counsel again took full responsibility for failing to discover the evidence in time to seek its admission before trial, stating, "[I]t is my problem. I didn't see that. Absolutely." The State objected to the motion, arguing that Marchet had proffered no evidence to prove that the prior consensual sexual encounter could have caused the injury. The district court expressed concern that if it failed to conduct a rule 412 hearing, Marchet might later claim ineffective assistance of counsel. Nevertheless, the court informed Marchet's counsel that unless he could present expert testimony tying the prior sex act to S.W.'s injury, the evidence would not be relevant.

Counsel for the State reminded Marchet's counsel that Marchet's prior attorney had designated a defense expert, Nurse Carver. Marchet's counsel explained that he had not spoken with an expert because he knew that S.W. had not suffered any acute injuries and he did not want to emphasize the minimal redness observed by Thompson. The district court took a recess to allow counsel to speak with Carver. When he returned, counsel stated that he would no longer seek to introduce the rule 412(b) evidence, as Carver would testify that the redness Thompson had observed was not an injury, obviating the need for evidence of an alternative source of the redness. The district court then indicated on the record that Marchet's counsel had made a strategic decision not to pursue admission of the rule 412(b) evidence.

4

> Marchet testified in his own defense. He acknowledged having had sex with S.W. outside of the club on the night in question but insisted that it was consensual. He admitted saying "don't go pull a Kobe on me" after the encounter, but he explained that he did so only because S.W. had "freaked out." Carver also testified for the defense and opined that the redness that Thompson had observed was not significant and did not indicate nonconsensual sex. She also testified that if the encounter happened as S.W. had described, then Carver "would have expected to see injuries."

*Marchet*, ¶¶ 7-15. Petitioner was convicted of rape.

### C. State Direct Appeal

Petitioner pursued two issues on appeal: (1) That his trial counsel was ineffective in not seeking admission of Rule 412(b) evidence to give an alternative explanation for the victim's injury; and (2) that the trial court erroneously admitted the testimony that he had sexually assaulted A.H. and P.C. as prior-bad-act evidence under Utah Rule of Evidence 404(b). *Id.* ¶ 17.

Against these challenges, the Utah Court of Appeals affirmed Petitioner's conviction, ruling on the ineffective-assistance claim:

> In light of th[e] substantial evidence, admission of the rule 412(b) evidence to provide a possible alternate explanation for the disputed injury to S.W. would not have altered the "entire evidentiary picture" against Marchet, *see Lenkart*, 2011 UT 27, ¶ 38, and its absence does not undermine our confidence in the ultimate verdict, *see State v. Eyre*, 2008 UT 16, ¶ 17, 179 P.3d 792. Accordingly, Marchet has failed to demonstrate prejudice arising from any alleged deficiency in his trial counsel's performance below, and we therefore reject his ineffective assistance of counsel claim.

*Id.* ¶ 26. And on the prior-bad-act evidence, the court ruled that the trial court's analysis was sufficient to withstand Petitioner' attacks, based on "general assertions of error," failure of A.H.'s testimony to show modus operandi, and lack of similarity between P.C.'s assault and current victim S.W.'s assault. *Id.* ¶¶ 29-32.

5

Next, Petitioner petitioned for certioriari review in the Utah Supreme Court, raising these two issues: (1) "Whether the Court of Appeals erred by failing to utilize the analysis established by this Court in *State v. Verde*, 2012 UT 60, when it affirmed the admission of prior bad act evidence during trial." (ECF No. 18-3, at 14.) And, (2) "[w]hether the Court of Appeals erred when it determined that Marchet's trial counsel's deficient performance could not have prejudiced him. (*Id.*) The supreme court denied certiorari review. *State v. Marchet*, 341 P.3d 253 (Utah 2014) (table).

### D. State Post-Conviction Petition

Petitioner's subsequent state post-conviction petition also attacked his conviction, on the following grounds:

(1) That his trial counsel was ineffective for (a) not requesting discovery, especially as to the 412(b) evidence, phone and mental-health records; (b) presenting testimony of Nurse Carver, whom Petitioner alleges was an unqualified expert witness; (c) conceding to other illegal acts (e.g., fornication) and not requesting a mistrial; (d) failing to object to unrelated Rule 404(b) forensic evidence; (e) conceding in closing argument that the rape occurred; (f) failing to correct the prosecutor's mischaracterization of evidence to emphasize that Petitioner "did not return to the club after the alleged assault"; (g) not impeaching witnesses's testimony; (h) failing to argue witnesses's statements "violated Utah Rule of Evidence 608" and qualified "as post motive under Utah Rules of Evidence 801(d)"; (i) failing "to have the sexual assault examination thrown out because it was not evaluated as S.W. having sex with two different men in a 36 hour period"; (j) failing to present 412(b) evidence; (k) "cumulative error"; and (l) failing to object to various alleged instances of prosecutorial misconduct. (ECF Nos. 18-5; 18-7, at 3 n.3.)

(2) That his appellate counsel was ineffective for (a) deficient briefing; and (b) failing to brief the "more favorable *Verde* 2012 spectrum." (*Id.*)

On summary judgment, the state post-conviction court rejected Petitioner's application, ruling that Petitioner's "claims regarding trial counsel's alleged deficiencies are barred by the PRCA and necessarily fail as a matter of law." (ECF No. 18-7 (citing "Post-Conviction Remedies Act (PCRA), Utah Code Ann. §§ 78B-9-101, *et seq*.") The court noted that

> [t]he PCRA is the "sole remedy for any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies, including a direct appeal." Utah Code Ann. § 78B-9-102(1)(a). Under the PCRA, post-conviction relief is only available on certain grounds, including where "the petitioner had ineffective assistance of counsel." *Id.* § 78B-9-104(1)(d). However, a petitioner "is not eligible for relief . . . upon any ground that . . . was raised or addressed at trial or on appeal," or that could have been but was not raised at trial or on appeal," *id.* § 78B-106(1)(c)-(d), unless "the failure to raise that ground was due to ineffective assistance of counsel." *id.* § 78B-9-106(3).

(*Id.*) And--because Petitioner did not show or proffer "any evidence to satisfy the first prong of the *Strickland* test or show that appellate counsel performed deficiently by failing to raise the [claims of trial-counsel ineffectiveness]"--the state post-conviction court ruled that those claims "are procedurally barred and the State is entitled to summary judgment on [those] issue[s]." (*Id.*) The state court further concluded that he was not prejudiced by appellate counsel's allegedly deficient performance. (*Id.*)

The Utah Court of Appeals summarily affirmed the post-conviction court's denial of relief, rejecting all grounds of ineffective assistance of counsel. (ECF No. 18-13.) The court further addressed Petitioner's claim "that the trial court violated federal law because he was not allowed to prove that 'another person was responsible,'" stating this claim "may refer to his trial counsel's failure to pursue evidence under rule 412 of the Utah Rules of Evidence to demonstrate

7

that the victim's injuries noted in an examination were cause by another person." (*Id.* at 13.) However, the court of appeals concluded, "This issue was raised and rejected on direct appeal and was therefore precluded from being raised in a post-conviction petition." (*Id.*)

Petitioner's certiorari petition to the Utah Supreme Court presented the following questions for review: (1) "Did the court of appeals err in refusing to analyze the 404(b) evidence via the *State v. Verde*, 2012 UT 60, two step framework despite the Utah Supreme Court mandate that it do so via *State v. Belgard*, 615 P.2d 1274 (1980)?" (ECF No. 18-13.) (2) Did the court of appeals err in failing to hold that appellate counsel performed deficiently?" (*Id.*) (3) Did the court of appeals err in failing to hold that the trial court violated federal law by not allowing Marchet to demonstrate that his failure to present Rule 412 evidence was because of ineffective assistance of counsel?" (*Id.*) The Utah Supreme Court denied the petition. *Marchet v. State*, No. 20180741-SC, slip op. (Utah Nov. 6, 2018).

## II. PETITIONER'S ASSERTED GROUNDS FOR FEDERAL-HABEAS RELIEF

Petitioner raises the following issues for federal habeas review: (1) Trial counsel provided ineffective assistance of counsel by failing to introduce Rule 412(b) evidence to explain an alternative cause of the victim's injury; (2) appellate counsel provided ineffective assistance of counsel by failing to review police reports by "the state's star witness AWD"; (3) violation of Utah Supreme Court rules; (4) prosecutorial misconduct; (5) false expert/forensic testimony, resulting in "improper bolstering"; and (6) cumulative error. (ECF No. 1.)

### A. Procedural Default

Respondent argues that Petitioner's "appellate-counsel ineffectiveness, prosecutorial misconduct, false medical testimony, and cumulative error claims are procedurally defaulted

8

because they were never fairly presented to the highest state court and the time for doing so has long passed." (ECF No. 13.)

The Court agrees with Respondent that all these issues are procedurally defaulted under the below analysis. After all, as further discussed below, the specific issue of appellate-counsel ineffectiveness raised in this federal petition "could have been, but was not, raised in a previous request for postconviction relief," Utah Code Ann. § 78B-9-106(1)(d) (2022); and the issues of prosecutorial misconduct, false medical testimony, and cumulative error "could have been but w[ere] not raised in the trial court, at trial, or on appeal," Utah Code Ann. § 78B-9-106(1)(b) (2022).[2]

This Court may not consider issues "defaulted in state court on independent and adequate state procedural grounds 'unless [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Hamm v. Saffle*, 300 F.3d 1213, 1216 (10th Cir. 2002) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Based on the Court's review of Utah cases, Utah's procedural rules regarding default are "independent and adequate state procedural ground[s]" for dismissal of Petitioner's case in that they are "'strictly or regularly followed' and employed 'evenhandedly to all similar claims.'" *See Hamm*, 300 F.3d at 1216 (quoting *Hickman v. Sears*, 160 F.3d 1269, 1271 (10th Cir. 1998)) (quotation omitted in original); *see, e.g., Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 50 (same); *Kell v. Utah*, 194 P.3d 913, 918 (Utah 2008) (holding post-conviction court correctly dismissed claims that had been previously raised and rejected, or could have been but were not

---

[2] Petitioner may argue that he raised issues of prosecutorial misconduct in his state post-conviction petition, but as the state post-conviction court noted, "[Petitioner] subsequently clarified that most of his separate claims are more accurately characterized as part of his ineffective assistance of counsel claim." (ECF No. 18-7, at 3 n.3.) These "separate claims" included prosecutorial misconduct.

raised, on direct appeal); *Gardner v. Galetka*, 151 P.3d 968, 969 (Utah 2007) (holding claim would have been procedurally barred because it could have been brought in prior post-conviction proceeding); *Hutchings v. Utah*, 84 P.3d 1150, 1153 (Utah 2003) (affirming dismissal of all claims that were raised, or could have been raised, in prior proceedings); *State v. Loose*, 135 P.3d 886, 889-90 (Utah Ct. App. 2006) (holding inmate barred from bringing post-conviction claim when issue could have been but was not raised on appeal); *State v. Stone*, 2004 UT App 369, ¶ 5 (unpublished) (declining to consider all claims that were raised or could have been raised at trial or on direct appeal).

Under the federal law outlined earlier, this Court must therefore dismiss Petitioner's defaulted issues unless cause and prejudice or a fundamental miscarriage of justice redeems their default. *See Gonzales v. Jordan*, No. 01-6415, 2002 WL 1203905, at *3-4 (10th Cir. June 5, 2002) (unpublished).

Petitioner argues cause and prejudice are at play here. Petitioner specifically asserts cause and prejudice stem from his lack of legal resources and experience and "prison interference with his legal actions in a variety of ways including . . . throwing away legal work in the form of documents, solitary confinement, and confiscation of legal materials." (ECF No. 26, at 2-3.)

"[T]o satisfy the 'cause' standard, Petitioner must show that 'some objective factor external to the defense' impeded his compliance with Utah's procedural rules." *Dulin v. Cook*, 957 F.2d 758, 760 (10th Cir. 1992) (citations omitted). Meanwhile, to demonstrate prejudice, "'[t]he habeas petitioner must show not merely that . . . errors . . . created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage.'" *Butler v. Kansas*, No. 02-3211, 2002 WL 31888316, at *3 (10th Cir. Dec. 30, 2002) (unpublished) (alteration in original) (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (emphasis in original)).

10

Petitioner has not met his burden of showing that objective factors external to the defense hindered him in meeting state procedural demands. Under Tenth Circuit case law, lack of legal resources and knowledge (including Petitioner's own misunderstanding) are circumstances that do not carry Petitioner's burden to show cause. *Gilkey v. Kansas*, 58 F. App'x 819, 822 (10th Cir. 2003) (unpublished) (holding limited knowledge of law is insufficient to show cause for procedural default); *Rodriguez v. Maynard*, 948 F.2d 684, 688 (10th Cir. 1991) (concluding petitioner's pro se status and corresponding lack of awareness and training on legal issues do not constitute adequate cause for his failure to previously raise claims). Indeed, these are factors that are *internal* to Petitioner's "defense."

Further, regarding Petitioner's unsupported and vague allegations of "interference with his legal actions in a variety of ways including . . . throwing away legal work in the form of documents, solitary confinement, and confiscation of legal materials," Petitioner gives no crucial details, like names, dates, and lengths of time, (*see* ECF No. 26, at 2-3), nor does he submit evidence of this obstruction. Without such details, Petitioner has failed to carry his burden of showing such factors "'worked to his *actual* and substantial disadvantage.'" *Butler*, 2002 WL 31888316, at *3 (citation omitted).

In sum, the Court concludes that Petitioner's issues are procedurally defaulted.  And, these issues do not qualify for consideration under the cause-and-prejudice exception to the procedural bar.  The Court thus denies Petitioner federal habeas relief.

### B. Lack of Federal Law Violation

Next, "Petitioner argues that the Utah Court of Appeals violated rules established by the Supreme Court of Utah." (ECF No. 1, at 28.) More specifically, Petitioner challenges the Utah Court of Appeals's failure to apply the state supreme court's analysis from "*State v. Verde* 2012

11

UT Sup Ct" to its decision regarding the introduction through witness testimony of prior bad acts under evidentiary rule 404(b). (*Id.* at 31.)

This alleged violation is based on state law and, therefore, fails to raise a federal issue, as required. The United States Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.").

The Supreme Court has repeatedly emphasized "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 67-68 (citing 28 U.S.C.S § 2241 (2022)). Thus, Petitioner's claim--based on alleged violation of Utah law--does not raise a federal challenge; further federal habeas review of state-law-based claims is unwarranted. *See Larson v. Patterson,* 2:09-CV-989-PMW, 2011 U.S. Dist. LEXIS 3831 (D. Utah Jan. 14, 2011) (unpublished) ("Petitioner's first argument that the trial court should have . . . dismissed the charges against him is based entirely on state law. . . . Therefore, this Court will not further consider this state-law-based argument."); *see also Scott v. Murphy*, 343 F. App'x 338, 340 (10th Cir. 2009) (rejecting petitioner's . . . claim that "involve[d] purely matters of state law.").

Thus, this issue--based on state law--will not be treated further: assertion of evidentiary error by the trial court in not applying the state-law analysis in *Verde*, in allowing prior-bad-act evidence at trial.

**C. Merits Analysis of Ineffective-Assistance-of-Counsel Claim**

There is but one remaining issue: The allegation that trial counsel provided ineffective assistance of counsel by failing to introduce Rule 412(b) evidence to explain an alternative cause of the victim's injury. (ECF No. 1, at 18.) Petitioner argues both that his trial counsel's performance was deficient and that the deficient performance prejudiced him. (*Id.* at 19-24.) Fatal to this argument, though, he omits any mention of the Utah Court of Appeals's analysis (deciding the issue solely on the basis of lack of prejudice), completely ignoring the required federal habeas standard of review.

**1. Standard of Review**

The standard of review to be applied in federal habeas cases is found in § 2254, under which this habeas petition is filed. It states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.S. § 2254(d) (2022).

The Court's inquiry centers on whether the Utah Court of Appeals's[3] rejection of Petitioner's claims "was contrary to, or involved an unreasonable application of, clearly established Federal law. 28 U.S.C.S. § 2254(d)(1) (2022). This "'highly deferential standard,'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citations omitted); *see also Littlejohn v.*

---

[3] The Court looks to the court of appeals's decisions on direct appeal and post-conviction review, as they are the last reasoned state-court opinion on the claim at issue. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

13

*Trammell*, 704 F.3d 817, 824 (10th Cir. 2013), is "'difficult to meet,' because the purpose of AEDPA is to ensure that federal habeas relief functions as a '"guard against extreme malfunctions in the state criminal justice systems,"' and not as a means of error correction." *Greene v. Fisher*, 132 S. Ct. 38, 43-44 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment))). The Court is not to determine whether the court of appeals's decision was correct or whether this Court may have reached a different outcome. *See Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). And, "[t]he petitioner carries the burden of proof." *Cullen*, 131 S. Ct. at 1398.

Under *Carey v. Musladin*, 549 U.S. 70 (2006), the first step is determining whether clearly established federal law exists relevant to Petitioner's claims. *House*, 527 F.3d at 1017-18; *see also Littlejohn*, 704 F.3d at 825. Only after answering yes to that "threshold question" may the Court go on to "ask whether the state court decision is either contrary to or an unreasonable application of such law." *Id.* at 1018.

> [C]learly established [federal] law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*Id.* at 1016.

Further, "in ascertaining the contours of clearly established law, we must look to the '*holdings* as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Littlejohn*, 704 F.3d at 825 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (emphasis added) (citations omitted)). And, in deciding whether

14

relevant clearly established federal law exists, this Court is not restricted by the state court's analysis. *See Bell v. Cone*, 543 U.S. 447, 455 (2005) ("[F]ederal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) ("[A] state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'") (citation omitted).

If this threshold is overcome, this Court may grant habeas relief only when the state court has "unreasonably applied the governing legal principle to the facts of the petitioner's case." *Walker v. Gibson*, 228 F.3d 1217, 1225 (10th Cir. 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). This deferential standard does not let a federal habeas court issue a writ merely because it determines on its own that the state-court decision erroneously applied clearly established federal law. *See id.* "'Rather that application must also be unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 411). Indeed, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Harrington*, 131 S. Ct. at 785 (emphasis in original) (quoting *Williams*, 529 U.S. at 410).

This highly demanding standard was meant to pose a sizable obstacle to the habeas petitioner. *Id.* at 786. Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id*. It maintains power to issue the writ when no possibility exists that "fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents. It goes no farther." *Id.* To prevail in federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at

15

786-87. Against this backdrop, the Court now applies the standard of review to this case's circumstances.

### 2. Application of Standard of Review

Again, the issue is an allegation of ineffective-assistance-of-trial-counsel issue stemming from counsel's failure to properly prepare for trial regarding the Rule 412(b) evidence and to not seek admission of that evidence.

Remembering that review is tightly restricted by the federal habeas standard of review, this Court observes that the Utah Court of Appeals selected the correct governing legal principle with which to analyze the ineffective-assistance-of-counsel issue. *Marchet*, at ¶¶ 19-22. It is the familiar two-pronged standard of *Strickland v. Washington,* 466 U.S. 668 (1984): (1) deficient performance by counsel, measured by a standard of "reasonableness under prevailing professional norms"; and, (2) prejudice to the defense caused by counsel's deficient performance. *Id.* at 687-88. And, the prejudice element--which is the only prong at issue here--requires a showing that errors were so grave as to rob the petitioner of a fair proceeding, with a reliable, just result. *Id*.

Under the standard of review, Petitioner does not even argue that the court of appeals got this wrong. He simply does not address at all the court of appeals's conclusion that there was no prejudice. Most importantly, as to ineffective assistance of trial counsel, Petitioner does not mention or attempt to meet his burden of suggesting any United States Supreme Court on-point case law exists that is at odds with the court of appeals's result. And, this Court's review of Supreme-Court case law reveals none. *See, e.g., Harrington*, 562 U.S. at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might

have been established if counsel acted differently. *See Wong* v. *Belmontes*, 558 U.S. 15, 27 (2009) (per curiam); *Strickland*, 466 U.S. at 693. Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different. *Id.* at 696. This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' *Id.* at 693, 697. The likelihood of a different result must be substantial, not just conceivable. *Id.* at 693."); *Wright v. Van Patten*, 552 U.S. 120, 125 (2008) (per curiam) (evaluating claim under *Strickland* when no Supreme Court precedent established that any other standard applied to "novel factual context" before Court).

Based on *Strickland*, the Utah Court of Appeals was right to analyze how counsel's performance may or may not have been prejudicial, and, on the basis that it was not, reject Petitioner's ineffective-assistance-of-trial-counsel claim. With Petitioner forfeiting his burden, this Court is not at all persuaded that the court of appeals's application of relevant Supreme-Court precedent was unreasonable and denies habeas relief on the basis of ineffective assistance of counsel.

### III. CONCLUSION

Petitioner's claims either (a) are procedurally defaulted and do not warrant exceptional treatment; (b) lack a valid federal basis; or (c) fail to overcome the federal habeas standard of review.

**IT IS THEREFORE ORDERED** that:

**(1)** The federal habeas petition here is **DENIED**. (ECF No. 1.) And, this action is **DISMISSED WITH PREJUDICE**.

**(2)** A certificate of appealability is **DENIED**.

DATED this 29th of September, 2022.

BY THE COURT

_____
JUDGE TED STEWART
United States District Court